## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EMILY MCCULLEY,                                )
                                               )
        Plaintiff,                             )
                                               )
v.                                             )    Case No. 12-cv-2587 JTM/KGS
                                               )
UNIVERSITY OF KANSAS,                          )
    SCHOOL OF MEDICINE                         )
and STEVEN STITES, M.D.,                        )
                                               )
        Defendants.                            )
                                               )
_____)

## COMPLAINT

        The plaintiff, Emily McCulley, for her claim for relief against the defendants,

states and alleges the following:

### JURISDICTION AND VENUE

        1.      This is a discrimination case based upon and arising under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* and the Rehabilitation Act of

1973, 29 U.S.C. § 701, *et seq.*

        2.      This court has subject matter jurisdiction over the plaintiff's federal claims

pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law.

        3.      All of the unlawful acts and practices set forth below were committed

within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. §

1391(b)-(c).

1

## **PARTIES**

5.    The plaintiff, Emily McCulley, is a citizen and resident of Wichita, Kansas.

6.    The defendant, University of Kansas, School of Medicine ("School of Medicine") is a state-supported educational institution, whose main campus is located in Kansas City, Kansas.

7.    The University of Kansas, School of Medicine is a "public entity" within the meaning of the ADA and is also an agency subject to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as it receives federal funding.

8.    The defendant, Steven Stites, M.D., is the Acting Dean of the School of Medicine.    Dr. Stites is being sued in his official capacity, and not in his individual capacity.

## **FACTUAL ALLEGATIONS**

9.    Ms. McCulley applied to the School of Medicine for admission to the 2012 class.

10.    In a letter dated September 30, 2011, Ms. McCulley was informed that she had been admitted to the School of Medicine's entering class of 2012, which was scheduled to begin classes on July 20, 2012.

11.    The letter stated further that Ms. McCulley's admission was conditioned on her completion of a number of requirements, including being able to complete the school's technical standards.

12.    Following notification of her admission, Ms. McCulley advised the School of Medicine that she could not perform some of the technical standards required of

2

students without reasonable accommodation, as she has a medical condition that requires the use of a wheel chair, and she is unable to stand.

13.    Ms. McCulley has been diagnosed with Spinal Muscular Atrophy, which limits the body's muscular development. While Ms. McCulley must use a wheel chair for mobility, she has the use of her arms and hands, although her strength is limited.

14.    Ms. McCulley provided the school a written accommodation request and stated that her disability may limit the weight she could lift without assistance.

15.    Ms. McCulley met with the School of Medicine's disability accommodation specialist, Carol Wagner, and members of the school's faculty, Dr. Mark Meyer and Dr. Garold Minns, on March 20, 2012, to discuss the school's technical requirements. The technical standards are mainly focused on a student's activities during clinical rotations, which upon information and belief, is completed by students during the final two years of the four-year program.

16.    During this meeting, there was no discussion of possible accommodations as Ms. Wagner and the faculty only focused on whether Ms. McCulley could perform the technical standards without accommodation.

17.    Ms. McCulley followed up with the school in the weeks and months after the meeting, but was told the faculty was still reviewing her situation.

18.    On May 24, 2012, Ms. McCulley was provided with clinical rotation information forms detailing the respective activities/abilities required for the respective clinical rotations. Ms. McCulley was requested to share these with her treating physician and have him provide a response as to her ability to handle these requirements.

3

19.     In a letter dated June 22, 2012, Ms. McCulley's treating physician, Dr.
Scott Meyers, expressed his opinion concerning whether Ms. McCulley could perform
the required activities of the clinical rotations. Dr. Meyers opined Ms. McCulley would
be able to perform all but a few of the listed activities with no accommodation. Dr. Scott
noted that Ms. McCulley may have difficulty adjusting patients in their beds without
assistance, noting that smaller, weaker students would have the same problem, and
that reasonable accommodations could be made for Ms. McCulley. Dr. Meyers also
noted that visits to homes that are not wheelchair accessible would present a problem.

20.     The School of Medicine deemed the letter insufficient, requesting Dr.
Meyers to fill out several forms, which Ms. McCulley forwarded to Dr. Meyers.

21.     On July 3, Ms. McCulley notified the School of Medicine by email that she
would be willing to incur the cost of a medical assistant to shadow her during clinical
rotations to assist with any tasks that she may have trouble with due to her weakened
arm strength.

22.     On July 13, 2012, Ms. McCulley provided to the School of Medicine the
completed forms which Dr. Meyers had completed.

23.     Dr. Meyers noted in the forms that Ms. McCulley "may not be able to
independently position patients"; Ms. McCulley would be "unable to catch" elderly
patients or assist patients requiring excessive strength (more than 20 pounds); Ms.
McCulley would be "unable to move patients"; Ms. McCulley would be unable "to use
enough physical force for chest compressions" in performing basic life support; and that
Ms. McCulley would be unable to stand at a bedside because of lack of leg strength.

4

24.     Dr. Meyers indicated that accommodations could be made for positioning patients and other manual tasks by having the task performed by other medical personnel, such as a nurse. Dr. Meyers did not suggest an accommodation for performing chest compressions.

25.     On July 16, 2012, Dr. Stites sent a letter to Ms. McCulley, concluding that she could not meet the essential requirements of the School of Medicine's education program with or without reasonable accommodation. The letter further stated that the School of Medicine was rescinding its decision to admit Ms. McCulley to the 2012 class.

26.     The School of Medicine's decision was based on Ms. McCulley's perceived inability to perform chest compressions and her inability to position patients, which are purportedly essential requirements of its curriculum. The letter stated that the decision was based on Dr. Meyers' opinion in the letter and forms he provided.

27.     The School of Medicine never suggested or engaged in any discussions regarding possible reasonable accommodations during this evaluation process and the denial letter did not mention Dr. Meyers' suggested accommodations, or Ms. McCulley's suggested reasonable accommodation of a medical assistant. During this evaluation process, the School of Medicine was only concerned with whether Ms. McCulley could perform what it deemed essential parts of its curriculum without accommodations of any kind.

28.     Before engaging in this lawsuit, Ms. McCulley asked the school's faculty to reconsider the decision to revoke her acceptance based on her disability and engage in an interactive dialog concerning possible reasonable accommodations. The School of Medicine denied this offer.

5

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

29.    Paragraphs 1 through 28 are hereby incorporated as though fully set forth in Count I.

30.    The School of Medicine is a "public entity" within the meaning of the ADA.

31.    Ms. McCulley meets the definition of "a qualified person with a disability" within the meaning of the ADA. Specifically, Ms. McCulley has a muscular disease which substantially impairs the major life activities of walking and standing.

32.    Ms. McCulley is and has always been fully qualified and able to perform the essential functions of the School of Medicine's curriculum, including the technical standards used to discriminate against Ms. McCulley, if she is provided with reasonable accommodations.

33.    The School of Medicine's technical standards used to discriminate in this matter, including but not limited to the ability to position patients and perform chest compressions, are not essential parts of the curriculum.

34.    The reasonable accommodations that could be utilized to allow Ms. McCulley to perform the technical standards would not be an undue burden or fundamentally alter the School of Medicine's curriculum.

35.    The School of Medicine, through its agents and employees, has intentionally discriminated against Ms. McCulley by refusing to provide reasonable accommodations to allow her to attend medical school.

36.    Ms. McCulley's disability was a motivating factor in the decision to rescind Ms. McCulley's admission to the School of Medicine.

6

WHEREFORE, plaintiff prays for judgment against defendant Stites in the form of an order enjoining him to allow Ms. McCulley admission to the School of Medicine, plus an award of attorney's fees, litigation expenses, and for such other and further relief that the Court deems proper.

## COUNT II

## DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

37.    Paragraphs 1 through 36 are hereby incorporated as though fully set forth in Count II.

38.    KU, its School of Medicine, and the State of Kansas have all received substantial federal financial assistance at all times relevant to this lawsuit.

39.    The School of Medicine discriminated against Ms. McCulley, a qualified person with a disability, in programs and activities receiving federal financial assistance solely because of her disability, in violation of 29 U.S.C. § 794. Specifically, the School of Medicine rescinded its admission previously granted to Ms. McCulley and refused to grant her reasonable accommodations.

40.    The School of Medicine's failure to provide Ms. McCulley with an assistant or other means of accommodation, which would enable her to attend medical school, constituted unlawful and intentional discrimination on the basis of her disability in violation of the Rehabilitation Act.

41.    The School of Medicine's failure to comply with its obligations under the Rehabilitation Act has caused, and continues to cause, Ms. McCulley to feel humiliated, embarrassed, angry, and degraded, as a consequence of which she has suffered, and continues to suffer, mental anguish, emotional distress, and loss of enjoyment of life.

WHEREFORE, plaintiff prays for judgment against defendant School of Medicine in the form of: (1) an order enjoining defendant from engaging in discriminatory conduct, and requiring the defendant to admit plaintiff to the School of Medicine; and (b) an award of compensatory damages in excess of $100,000.00 for humiliation, anger, mental anguish, emotional distress, and loss of enjoyment of life, as well as attorney's fees, litigation expenses, and such other and further relief as this Court deems just, equitable and proper.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
    MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, KS 66603-3456
Office: (785) 357-6311
Fax:    (785) 357-0152

BY: s/ Alan V. Johnson
    Alan V. Johnson, KS # 9992

BY: s/Aaron R. Bailey
    Aaron R. Bailey, KS #25110
    ATTORNEYS FOR PLAINTIFF

8

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the Plaintiff requests a trial by jury on all claims

triable to a jury.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
    MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Suite 1000
Topeka, KS 66603-3456
Office: (785) 357-6311
Fax:    (785) 357-0152


BY:   s/ Alan V. Johnson
    Alan V. Johnson, KS # 9992
    Aaron R. Bailey, KS #25110
    **ATTORNEYS FOR PLAINTIFF**

## DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that Kansas City, Kansas, be designated as the place of trial in

the above captioned matter.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
    MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Suite 1000
Topeka, KS 66603-3456
Office: (785) 357-6311
Fax:    (785) 357-0152


BY:  s/  Alan V. Johnson
    Alan V. Johnson, KS # 9992
    Aaron R. Bailey, KS #25110
    **ATTORNEYS FOR PLAINTIFF**

10