IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

E<small>MILY</small> M<small>C</small>C<small>ULLEY</small>,

        Plaintiff,

        vs.                              Case No. 12-2587-JTM

T<small>HE</small> U<small>NIVERSITY OF</small> K<small>ANSAS</small> S<small>CHOOL OF</small>
M<small>EDICINE</small>, and S<small>TEVEN</small> S<small>TITES</small>, M.D.,

        Defendants.


MEMORANDUM AND ORDER

      Plaintiff Emily McCulley has Spinal Muscular Atrophy, which limits her muscular development. She requires a wheel chair, but has the use of her arms and hands, although with limited strength. McCulley alleges that she was denied admission to the University of Kansas School of Medicine after the School learned of her disability and failed to offer her reasonable accommodation from various motor functional standards the School requires. She then brought the present action against the School and its Acting Dean, Dr. Steven Stites, alleging violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, as well as the Rehabilitation Act, 29 U.S.C. § 701.

      The matter is currently before the court on the defendants' Motion to Dismiss, arguing that the ADA claim is subject to Eleventh Amendment immunity, and that the

claim against Dr. Stites should be dismissed as superfluous to the claim against the real party in interest, KU Medical School.

The Eleventh Amendment grants states immunity from suits brought by private citizens in federal court. Congress may abrogate that immunity where its intent to do so is "unequivocally expressed" and it acts under a valid grant of constitutional authority. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000).

The issue here is whether Title II of the ADA is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment, which authorizes Congress to remedy or prevent unconstitutional discrimination. *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 1986, 158 L.Ed.2d (2004) . In *City of Boerne v. Flores*, 521 U.S. 507, 519-20, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997), the Supreme Court held that under Section 5 legislation is valid if it exhibits "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *See also Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 728, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003). The plaintiff does not contest the defendant's argument that it is a state university, and is otherwise entitled to Eleventh Amendment protection in the absence of a valid § 5 waiver.

In applying this standard, the court looks to (1) the nature of the constitutional right or rights that Congress sought to enforce when it enacted the ADA, (2) whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response to this history and pattern of unequal treatment. *Board of Trustees v. Garret*, 531 U.S. 356,

2

365-70, 121 S.Ct. 955, 963-66, 148 L.Ed.2d 866 (2001); *Boerne*, 521 U.S. at 519, 117 S.Ct. at 2164.

In considering whether Congress validly waived Eleventh Amendment immunity under Title II of the ADA, the court does not look at the ADA "with its wide variety of applications, as an undifferentiated whole." *Lane*, 541 U.S. at 513-14. It looks at the particular form of alleged discrimination on a case by case basis.

Applying the *Boerne* standards in the present action, the court notes that McCulley concedes in her Response that access to public higher education is not a fundamental constitutional right, and that her claim thus does not involve a clear and unambiguous violation of the Fourteenth Amendment. She does argue, however, that her ADA claim presents "an Equal Protection Clause issue." (Resp. at 5).

Court have generally rejected claims for accommodation resting on Equal Protection Clause grounds. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 35-37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (rejecting claim that education is a fundamental right, thereby triggering strict scrutiny review under the Equal Protection Clause); *Erickson v. Bd. of Governors*, 207 F.3d 945, 951 (7th Cir. 2000) ("no one believes that the Equal Protection Clause establishes the disparate-impact and mandatory accommodation rules found in the ADA"). Here, while McCulley contends that the defendants violated Title II by failing to adopt reasonable accommodations for motor-technical standards, the underlying standards appear to be rationally-related principles focused on the ability of physicians to meet the medical needs of their patients.

With respect to the second *Boerne* factor, McCulley cites decisions from other circuits as having recognized the existence of a history of discrimination in public education, noting, for example, the observation of the Eleventh Circuit in *Association for Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) that education "affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and services."[1] However, that court was addressing a claim for accommodation in undergraduate education, and the court, in turn, rested its conclusion on *Brown v. Board of Educ.*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), which of course involved systemic race-based discrimination in primary and secondary schooling.

The present action involves a claim of discrimination at the post-graduate level, allegedly occurring in the defendant medical school, a far narrower field of education, and not one which is fundamental to other civic activities such as voting. Plaintiff has presented no evidence that Congress documented a history of disability discrimination in higher education in general, or in post-graduate education in particular.

Finally, in assessing the congruence and proportionality of Title II's regulation of state conduct, the court notes the prior conclusions of the Tenth Circuit in *Thompson v. Colorado*, 258 F.3d 1241 (2001) and *Guttman v. Khalsa*, 669 F.3d 1101 (2012). In *Thompson*, the court concluded that Title II was not a valid abrogation of Eleventh Amendment immunity:

---

[1] *See also Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005).

4

> This court cannot conclude that Congress "identified a history and pattern" of unconstitutional discrimination by the states against the disabled. Nor can this court find in the caselaw "extensive litigation and discussion of the constitutional violations." Without this foundation, Title II cannot be considered preventive or remedial legislation that is congruent and proportional to any constitutional violation. Without numerous documented occurrences of unconstitutional state discrimination against the disabled, Title II's accommodation requirement appears to be an attempt to prescribe a new federal standard for the treatment of the disabled rather than an attempt to combat unconstitutional discrimination.

258 F.3d at 1255 (internal citations omitted).

Of course, after *Thompson*, the Supreme Court found valid Title II waiver in two cases, *Lane*, 541 U.S. at 509 and *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). But these cases support a narrow determination of waiver, based on the circumstances of each case. In *Lane*, the determination of waiver rested on the infringement of the right of access to the courts, a fundamental constitutional right. In *Georgia*, the court found Title II waiver in a case brought by paraplegic prisoner who had demonstrated an *actual* violation of the Fourteenth Amendment.

In *Guttman v. Khalsa*, 669 F.3d 1101 (2012), the Tenth Circuit held there was no valid waiver in a case where the state revoked the medical license of disabled doctor. The court reasoned that the right to practice a chosen profession is not a fundamental right (such as the right of access to courts in *Lane*), and that Congress had not identified a pattern of discrimination in professional licensing.

> Ultimately, we are presented with a right that is not fundamental, very little evidence of a widespread pattern of irrational state discrimination in professional licensing, and a wide-reaching statute that inhibits a state's ability to safely and efficiently make professional licensing decisions. Title II

5

> prohibits a significant range of state action in this realm that would easily survive rational basis review. Accordingly, in this instance, Title II is "so out of proportion to a supposed remedial or preventive objective that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior."

669 F.3d at 1125 (quoting *City of Boerne*, 521 U.S. at 532, 117 S.Ct. 2157.

The court here reaches a similar result. The alleged discrimination at issue here — the motor skill standards for attendance of a post-graduate medical school — is closely analogous to the state's regulation of medical licensing in *Guttman*. There has been no showing of any Congressional findings of historical discrimination in medical schools, and the underlying motor skill standards have not been shown to be irrational. The court therefore concludes that Title II has not been shown to be proportional, congruent, or responsive to historical unconstitutional behavior, and grants the defendant's motion to dismiss the ADA claim.

As noted earlier, the defendants also seek dismissal of Dr. Stites as a defendant, on the grounds that the real party in interest in the action is the School of Medicine. McCulley responds that the series of New York cases cited by the defendants, such as *Emmons v. City Univ. of N.Y.*, 715 F.Supp.2d 394, 408 (E.D.N.Y.2010), arose outside the Tenth Circuit. Noting the exception to Eleventh Amendment immunity for claims for injunctive relief in *Ex parte Young*, 209 U.S. 123 (1908), she stresses that her action against Dr. Stites is proper given that Count II her Complaint also advances a request for "an order enjoining defendant from engaging in discriminatory conduct." (Resp. at 11).

The court notes that plaintiff only selectively quotes from the Complaint, which

6

reads in full as to the Count II Rehabilitation Act claim:

> WHEREFORE, *plaintiff prays for judgment against defendant School of Medicine* in the form of: (1) an order enjoining defendant from engaging in discriminatory conduct, and requiring the defendant to admit plaintiff to the School of Medicine; and (b) an award of compensatory damages in excess of $100,000.00 for humiliation, anger, mental anguish, emotional distress, and loss of enjoyment of life, as well as attorneys' fees, litigation expenses, and such other and further relief as this Court deems just, equitable and proper.

(Complaint at 8) (emphasis added). By its explicit terms, the Complaint only asks for judgment on the Rehabilitation Act against the KU School of Medicine. The only claim for judgment against Dr. Stites is in Count I.

The court grants the motion to dismiss Dr. Stites to the extent that McCulley would purport to advance any Rehabilitation Act claim against him. However, the court denies the motion to dismiss Dr. Stites as to Count 1. The court's determination that the KU School of Medicine is entitled to dismissal of any ADA claim against it is not dispositive as to any *Ex Parte Young* claim for prospective relief against Dr. Stites. *See Guttman*, 669 F.3d at 1129 (determination that Title II was not valid abrogation of Eleventh Amendment immunity was not dispositive of *Ex Parte Young* claim). "[N]either a state official's absolute immunity nor a state's sovereign immunity bars a plaintiff from bringing an *Ex parte Young* claim for a violation of Title II of the ADA." *Id.* at 1127. Such an ADA claim "may proceed even if the state defendants are protected by sovereign immunity." *Id.* (citing *Garret*, 531 U.S. at 374 n. 9).

In their Reply, the defendants stress that Title II only contemplates actions against "any state ... government" or "any department, agency ... other instrumentality of the

State."42 U.S.C. § 12131(1). Since, they argue, "Dr. Stites is in no way a public entity," he cannot be sued under the ADA. (Reply at 10). But this mistakes the statute, which generally proscribes discriminatory acts by public entities, with the remedy. But courts have recognized that the "public entity" language in § 12131 does not limit the relief available so as to preclude official capacity suits. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188-89 n. 10 (9th Cir. 2003).

Defendants also rely on *Helmick v. Utah Valley State College*, 394 Fed.Appx. 465, 466 (10th Cir. 2010), an Age Discrimination in Employment Act (ADEA) case, as authority for the dismissal of all official capacity claims against Dr. Stites. The court in that case held that the district court, which found it had no subject matter jurisdiction over defendants under the Eleventh Amendment, was required to dismiss such claims rather than (as it did) remanding them to a state administrative agency. But the plaintiff in *Helmick* apparently advanced no claim for prospective relief under *Ex Parte Young*.

Application of the doctrine has strong precedential support in the Tenth Circuit. In *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003), the Tenth Circuit rejected the contention that *Ex Parte Young* is inapplicable to actions under Title II of the ADA:

> We agree with the Fair that Title II of the ADA was not a valid abrogation of the States' Eleventh Amendment immunity. *See Thompson v. Colorado*, 278 F.3d 1020, 1034 (10th Cir.2001). The Fair also asserts that the *Ex parte Young* exception does not apply. We disagree.

348 F.3d at 850 (citations omitted).[2] Because the plaintiffs in *Chaffin* had presented a non-

---

[2] Following precedent, *Chaffin* held that application of *Young* required a four part test, the final part of which was whether the litigation would implicate "special sovereignty

8

frivolous ADA claim for prospective relief against defendants in their official capacities, it was "an easy conclusion" that *Ex Parte Young* was applicable. *Id.*

Similarly, the cases cited by defendants in their initial brief, such as *Emmons*, 715 F.Supp.2d at 408, *Maus v. Wappingers Cent. School Dist.*, 688 F.Supp.2d 282, 302 n. 10 (S.D.N.Y. 2010), and *A.M. ex rel. J.M. v. N.Y.C. Dept. Educ.*, 840 F.Supp.2d 660 (E.D.N.Y. 20012) involved no claim under *Ex Parte Young*. Indeed, in *Emmons*, the court dismissed the official capacity claim only provisionally, noting because "[o]n the face of the complaint, the *Young* exception is not supportable, ... all claims purportedly brought pursuant to that doctrine are dismissed with leave to replead." 715 F.Supp.2d at 408.

More importantly, these New York cases have their roots in earlier decisions which have been expressly disavowed by the Second Circuit.

> We ... cannot embrace the state defendant's statutory claim that an individual sued in his or her official capacity under the doctrine of *Ex parte Young* is not a "public entity" subject to liability under the ADA, 42 U.S.C. § 12132. The real party in interest in an official-capacity suit is the government entity. As a result, it is irrelevant whether the ADA would impose individual liability on the officer sued; since the suit is in effect against the "public entity," it falls within the express authorization of the ADA.

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir.2003) (citation omitted), *cert. denied*, 541 U.S. 936 (2004). *See also Harris v. Mils*, 572 F.3d 66, 73 (2d Cir. 2009) (rejecting various New

---

interests." The Supreme Court determined in *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) this element was unnecessary, as the *Young* doctrine requires "only ... a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 919 n. 1 (10th Cir. 2012) (recognizing partial abrogation of *Chaffin*).

York district cases "[i]nsofar as [they] hold that individual defendants cannot be sued in their official capacities for prospective injunctive relief under the ADA....").

Because the Complaint may be less than clear, the court grants in part and denies in part defendants' Motion to Dismiss to clarify that the Complaint is restricted to an ADA claim in Count I against Dr. Stites in his official capacity for prospective injunctive relief, and, in Count II, a Rehabilitation Act claim against KU School of Medicine for injunctive relief and damages.

IT IS SO ORDERED this 10th day of April, 2013.

                                           s/ J. Thomas Marten
                                           J. THOMAS MARTEN, JUDGE